Filed 9/8/20  P. v. Robles CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL R. ROBLES et al.,<br><br>    Defendants and Appellants. | C088156<br><br>(Super. Ct. No. 01FE016544) |

Defendants Michael R. Robles and Rudy M. Delossantos (collectively, defendants) were convicted of murder and assault with a deadly weapon while serving time in state prison.  On appeal, defendants each contend his trial counsel was ineffective in failing to object to misleading statements made by the prosecutor during closing argument.  Defendants also ask that we strike a $1,000 parole revocation restitution fine and remand the matter to allow the trial court to exercise its discretion to strike the prior serious felony conviction enhancements.  Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendants further argue the trial court erred in imposing certain fines and fees without holding a hearing to determine their ability to pay them.

1

Robles separately asserts that the evidence was insufficient to establish that he aided and abetted the murder or the assault with a deadly weapon. He also argues that the trial court erred in failing to advise him properly before he admitted his prior serious felony convictions.

For his part, Delossantos contends we must strike the sentence enhancement imposed on him for personal use of a deadly or dangerous weapon because dangerous weapon use already was an element of the underlying assault offense.

We will strike the parole revocation restitution fine imposed on each defendant, strike Delossantos's personal use of a deadly weapon enhancement on his assault conviction and, as to both defendants, remand the matter for the trial court to consider exercising its discretion to strike the prior serious felony conviction enhancements. We otherwise will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On July 7, 2016, defendants and the victim all were serving time in the same state prison. Both defendants were serving life sentences. At approximately 1:30 p.m. that day, Correctional Officers Henry Kirkland and Travis Tappan ordered the inmates they were supervising in the yard for recreation to get down. Kirkland had seen two inmates in what he thought was a fistfight with another inmate, who was defending himself. The men, who were 100 feet away from Kirkland, disobeyed the order and continued fighting. Correctional Officer Eric Baker approached and saw Robles and Delossantos attacking the victim, who was "actively defending himself." Baker testified at trial that he saw Delossantos strike the victim at least five times in a "stabbing motion." Baker also saw Robles punching and kicking the victim, but never saw him stab the victim. The victim fell to the ground, and Delossantos continued to stab him. Meanwhile, Robles kicked the victim "once or twice" in the upper torso and facial area, and punched him. Robles did not hold the victim down. The victim fought back, managed to stand back up, and continued to return punches.

2

Video footage of the incident that was played for the jury shows Robles and Delossantos together on the yard walking toward the victim (who also was walking). When the two reached the victim, Robles suddenly threw a punch; Delossantos immediately pulled something from his pocket and joined in the attack. The video shows Delossantos making stabbing motions as Robles continued to attack the victim, who is trying to fight back.

In an attempt to break up the fight, Kirkland and Tappan each fired three foam projectiles at the inmates. At least one of the projectiles hit Delossantos in the groin area. The fight only stopped after three other responding officers deployed pepper spray grenades. As Delossantos got to the ground, Baker saw him throw a weapon down. Correctional Officer Yang retrieved the weapon, a knife, or "shank," which had a nine-inch flattened metal stock attached to a four-and-a-half-inch handle. Baker testified the shank was "capable of inflicting serious injury" or death.

The officers then restrained the prisoners, and medical staff arrived to tend to the victim. The victim was "covered in blood" and "gasping for air," with "severe" stab wounds in his chest, back, thigh, and head. The victim died in the prison triage area due to excessive blood loss and a collapsed lung. The prison physician testified that the victim's stab wounds were the cause of death, rather than the blunt force injuries.

Baker testified at trial that he saw no injuries on Robles or Delossantos after the incident, though each appeared to have blood on their shirts. Officers searched Robles but did not find a weapon on him.

A jury found Robles guilty of murder (Pen. Code, § 187;[1] count one) and assault with a deadly weapon by means of force likely to produce great bodily injury while undergoing a life sentence in prison (§ 4500; count two). At the People's request,

---

[1] Undesignated statutory references are to the Penal Code.

3

without objection from Robles, the court deemed Robles's murder conviction to be second degree. Before trial, Robles admitted two prior strikes and two prior serious felony convictions. (§ 667, subds. (a)-(i).)

The jury found Delossantos guilty of first degree murder (§ 187, subd. (a); count one) and assault with a deadly weapon by means of force likely to produce great bodily injury while undergoing a life sentence in prison (§ 4500; count two). The jury found true that Delossantos had a prior strike (§ 667, subds. (b)-(i)) and a prior serious felony conviction (§ 667, subd. (a)), and had personally used a deadly and dangerous weapon while committing the crime (§ 12022, subd. (b)(1)). With respect to the murder charge, the jury found true that Delossantos had a prior murder conviction. (§§ 190.2, subd. (a)(2), 190.4.)

The trial court sentenced Robles to prison for life without the possibility of parole on the assault charge, plus five years for the prior serious felony conviction. (§§ 4500, 667, subd. (a).) It also imposed and stayed pursuant to section 654, a 45-year-to-life sentence on the murder charge, plus five years for the prior serious felony. The court further imposed a $1,000 restitution fine (§ 1202.4), a corresponding $1,000 parole revocation restitution fine (§ 1202.45), an $80 court operations assessment (§ 1465.8, subd. (a)(1)), and a $60 court facilities assessment (Gov. Code, § 70373).

The trial court sentenced Delossantos to life without the possibility of parole on the murder charge plus six years for the accompanying enhancements. (§§ 187, 190.2, subd. (a)(2), 12022, subd. (b)(1), 667, subd. (a).) It also imposed and stayed pursuant to section 654, a life without the possibility of parole sentence for the assault charge, plus six years for the accompanying enhancements. (§§ 4500, 12022, subd. (b)(1), 667, subd. (a).) It further imposed a $1,000 restitution fine (§ 1202.4), a $1,000 parole revocation restitution fine (§ 1202.45), an $80 court operations assessment (§ 1465.8, subd. (a)(1)), and a $60 court facilities assessment (Gov. Code, § 70373).

4

DISCUSSION

I

Defendants argue the prosecutor committed misconduct during rebuttal by displaying a cartoon and urging jurors to use common sense when weighing evidence. According to defendants, the jurors would have understood the prosecutor's comments to mean that, after seeing the video of the incident, they would only need to exercise common sense to find defendants guilty. Defendants argue the effect was to misstate the reasonable doubt standard and lower the prosecution's burden of proof. Defendants acknowledge they cannot challenge the prosecutor's statements directly on appeal because their lawyers did not object at trial, so they argue ineffective assistance of counsel.

A. *Additional background*

During closing argument, Delossantos's counsel argued that he acted in self-defense, noting assaults were frequent on the prison yard and that the prosecution had the burden to prove that it was not self-defense. She reminded the jury that the prosecution bore the burden of proof beyond a reasonable doubt and argued the defendants did not plan the fight. She also challenged the sufficiency and reliability of the evidence, noting that the prosecution had failed to present any fingerprint evidence from the knife.

Robles's counsel did not advance a self-defense theory. Instead, he argued the evidence was insufficient to establish that Robles knew about the knife or wanted to kill the victim.

During rebuttal, the prosecutor reminded the jury that the lawyers' statements were not evidence and that the prosecution had the burden to present evidence that proved defendants' guilt beyond a reasonable doubt. The prosecutor continued, "Your opinion of this evidence and of this testimony is what matters, and that's why we take the time to present all of it to you." Responding to defense suggestions that the trial was not thorough or did not take long enough, he said that all the "logical witnesses" and

5

"expected" evidence had been presented. The prosecutor argued that it was unnecessary to perform DNA testing on the blood at the crime scene because "common sense" suggested it was the victim's. He likewise argued that fingerprint evidence was unnecessary given that the video showed Delossantos stabbing the victim in broad daylight in front of witnesses.

The prosecutor continued, "The Judge will instruct you on the concept of proof beyond a reasonable doubt. It is our burden to prove that to you. We've done so. [¶] And [the judge will] tell you that proof beyond a reasonable doubt means proof that leaves you with an abiding conviction that the charge is true. [¶] The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] Reasonable doubt would have to be something that relates to an element of the charged offense. It would have to be based on the evidence, not speculation or any other improper source, and it would have to be reasonable. [¶] . . . [¶] It's your duty as jurors to consider only these things that are inside the circle that have been presented to you; the applicable law as read to you by the Judge, the elements of the crime, the exhibits you'll see, the photos that you'll see, the testimony of the witnesses who presented themselves to you, the expert opinions, and the credibility of witnesses."

The prosecutor continued, "You may remember back during voir dire when I asked you all questions, and the very first thing I asked was about common sense and whether or not folks have it and whether or not they are the gullible member of their friend[] groups and things like that. [¶] This is a comic by Gary Larson of the Far Side that illustrates the concept of common sense. [¶] Right? [¶] It shows someone abandoned on a deserted desert isle, and they're spelling out the word help, but they haven't finished it. [¶] And the helicopter pilot says wait, wait, cancel that. I guess it says H-E-L-F. [¶] And anyone knows by exercising their common sense that this guy on this deserted island wanted help. [¶] Right? [¶] This trial is no different. There's no

6

special expertise that you all need.  You got to see it.  You got to see it for yourselves, and in watching it and using your common sense, you can make also a determination about what it is that happened.  Don't forget to use your common sense."  Neither Robles's nor Delossantos's counsel objected to these remarks.

After the prosecution's rebuttal, the court instructed the jury:  "You must follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."  (CALCRIM No. 200.)  The court further instructed the jury regarding the burden of proof.[2]  It also told jurors to use their "common sense and experience" in determining whether witnesses were credible and whether their testimony was true and accurate.  (CALCRIM No. 226.)  The jurors received the same instruction before trial. (CALCRIM No. 105.)

B.      *Applicable law regarding prosecutorial misconduct*

" '[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation]."  (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*).)  Improper comments are misconduct if they "involve the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."  (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)  To establish misconduct, a defendant must show

---

[2]      The court instructed the jury with CALCRIM No. 220 as follows:  "A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.  [¶]  Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.  [¶]  . . .  Unless the evidence proves the defendant guilty beyond a reasonable doubt, they are entitled to an acquittal and you must find them not guilty."

that, " ' "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." [Citation.] If the challenged comments, viewed in context, "would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable." ' " (*Ibid*.) " 'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' [Citation.]" (*Centeno*, *supra*, at p. 667.)

For example, in *Centeno*, the defendant was convicted of sexually assaulting a seven-year-old victim. The victim gave inconsistent testimony and refused to answer multiple questions at trial. (*Centeno, supra*, 60 Cal.4th at pp. 662-664.) The Supreme Court reversed the defendant's convictions because the prosecutor twice misstated the burden of proof during rebuttal argument, after the trial court already had instructed the jury on the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt. First, the prosecutor presented a drawn outline of California and then described hypothetical testimony from multiple witnesses regarding cities and landmarks. (*Id*. at pp. 664-665.) The prosecutor stated that even though some of the information was incomplete and inaccurate, there was no reasonable doubt that the evidence described the State of California. (*Id*. at pp. 665-666.) The Supreme Court found the prosecutor's argument misstated the burden of proof and misled the jury to believe its task was akin to solving a picture puzzle unrelated to the evidence, and failed to accurately portray the state of the evidence presented at trial. (*Id*. at pp. 669-670, 674.)

The *Centeno* court found the prosecutor also committed misconduct when she argued that the "reasonable" conclusion to draw from the evidence was that defendant was guilty. (*Centeno, supra*, 60 Cal.4th at pp. 671-672.) The prosecutor argued it was reasonable to conclude that the victim was abused rather than making up her story. (*Id*. at p. 671.) In addition, there was no reasonable " 'innocent explanation for a grown man

8

laying on a seven year old.' " (*Id.* at pp. 671-672.)  The prosecutor also argued it was not reasonable to believe defendant was being set up by the police.  (*Id.* at p. 672.)  The court concluded these comments were misconduct because they "clearly diluted the People's burden" by "repeatedly suggest[ing] the jury could find defendant guilty based on a 'reasonable' account of the evidence."  (*Id.* at p. 673, italics omitted.)

Similarly, in *People v. Otero* (2012) 210 Cal.App.4th 865, the court concluded the prosecutor committed misconduct by using a diagram that included drawn outlines of California and Nevada and identifying landmarks.  (*Id.* at pp. 869-870.)  Some of the information on the diagram was incorrect and it stated:  " 'Even with incomplete and incorrect information, no reasonable doubt that this is California.' "  (*Id.* at p. 869.)  The court reasoned that "use of [the] diagram . . . is simply not an accurate analogy to a prosecutor's burden to prove beyond a reasonable doubt each and every element of a charged offense."  (*Id.* at p. 873.)  The misconduct was deemed harmless, however, because the case was otherwise strong and the trial court had admonished the jury to disregard the diagram and properly instructed it on proof beyond a reasonable doubt.  (*Id.* at p. 873.)

C.     *Defendants have forfeited their claim of prosecutorial misconduct and failed to establish ineffective assistance of counsel*

As defendants acknowledge, they cannot challenge the prosecutor's argument directly because they forfeited the claim by failing to object in the trial court.  (See *Centeno, supra*, 60 Cal.4th at p. 674 [defendant generally may not complain on appeal about prosecutorial misconduct unless he made a timely objection in the trial court and requested that the court admonish the jury].)  Defendants next argue their lawyers provided ineffective assistance in failing to object to the challenged statements.  We find defendants' contentions without merit.

To establish a claim of ineffective assistance of counsel, a defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective

9

standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant, meaning there is a "reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674, 693, 698].) Because defendants have failed to establish prosecutorial misconduct, we reject defendants' contention that their attorneys were ineffective in failing to object to the prosecutor's comments. (See *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["[f]ailure to raise a meritless objection is not ineffective assistance of counsel].)

Unlike *Centeno*, here the prosecutor did not present an objectionable hypothetical or visual aid to argue that the jury could use their common sense as a substitute for requiring the prosecution to meet its burden of proof. Instead, during his rebuttal argument, and before the jury was instructed, the prosecutor used a cartoon to encourage jurors to use common sense in evaluating the evidence. This argument was in line with the trial court's instructions after closing argument that the jury could use its "common sense and experience" in determining whether witnesses were credible and whether their testimony was true and accurate. (CALCRIM No. 226; see *People v. Campos* (2007) 156 Cal.App.4th 1228, 1240 ["CALCRIM No. 226 does not instruct jurors to use their common sense and experience in finding reasonable doubt, which could potentially conflict with the beyond a reasonable doubt standard, but only in assessing a witnesses' credibility"].)

It is not reasonably likely that the jury would have misunderstood the prosecutor's comments here, given that the prosecutor himself reminded the jury that the lawyers' statements were not evidence and that the People had the burden to present evidence that proved defendants' guilt beyond a reasonable doubt. Moreover, they were instructed a short time later regarding the presumption of innocence, the burden of proof, and the beyond a reasonable doubt standard. (See *People v. Otero, supra*, 210 Cal.App.4th at p.

10

873 [finding prosecutor's use of visual aids harmless in part due to the correct instructions on reasonable doubt].)  The trial court also instructed the jury that it must follow the court's instructions, rather than any attorney's comments.  We presume the jury followed the court's instructions rather than any conflicting comments by counsel. (*Centeno, supra*, 60 Cal.4th at p. 676.)  Defendants have failed to establish they received ineffective assistance of counsel.

## II

Defendants request that we strike the $1,000 parole revocation restitution fine because their sentences do not include a period of parole.  The People agree, as do we. Section 1202.45, subdivision (a) provides:  "In every case where a person is convicted of a crime *and his or her sentence includes a period of parole*, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of section 1202.4."  (Italics added.)  As the statute makes clear, when a defendant is not eligible for parole, the parole eligibility fine is " 'not applicable.' " (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1184.)  Hence, the fine should be stricken.

## III

Defendants ask us to remand the matter to permit the trial court to exercise its discretion to strike the prior serious felony conviction enhancements pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393).  The People agree that Senate Bill 1393 applies but argue remand is unnecessary because the record clearly indicates the trial court would not have stricken the enhancements.  According to the People, in making its sentencing decision, the trial court adopted the probation report, which identified multiple circumstances in aggravation and no circumstances in mitigation.  We will remand the matter.

A.     *Additional background*

The probation report for Robles recommended the trial court impose a term of life without the possibility of parole, plus the applicable term for the prior serious felony enhancements. The report noted no circumstances in mitigation. In aggravation, the report cited factors from California Rules of Court, rule 4.421,[3] including that the crime involved "great violence," showed planning and sophistication, and indicated that Robles "engaged in violent conduct which indicates a serious danger to society." In addition, Robles had an extensive criminal history, including a 2005 conviction for five counts of attempted murder and a 2012 conviction related to an assault on a fellow prison inmate. Robles's prior convictions included committing crimes for the benefit of a street gang.

The probation report for Delossantos similarly recommended the trial court impose life without the possibility of parole for the principal murder count, plus six years for the associated enhancements, with no circumstances in mitigation. Citing rule 4.421, the report listed aggravating factors, including that Delossantos was an identified gang member with an extensive criminal record, including a 2006 first degree murder conviction. In addition, the instant crime involved "great violence," showed planning and sophistication, and indicated that Delossantos had "engaged in violent conduct which indicates a serious danger to society."

Defendants did not file sentencing briefs requesting mitigated sentences, and during the hearing, when the trial court stated it had considered the probation reports and intended to follow the sentencing recommendations, neither counsel nor defendants argued for leniency, apart from a request from Delossantos's counsel that the trial court impose minimal fines.

---

[3]     Undesignated rule references are to the California Rules of Court.

B.     *Analysis*

At the time defendants were sentenced, the trial court had no discretion to strike an enhancement for a prior serious felony conviction.  (See former §§ 667, subd. (a) & 1385, subd. (b).)  Senate Bill 1393 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, amended sections 667, subdivision (a), and 1385, subdivision (b), and gave trial courts discretion to strike or dismiss a prior serious felony conviction allegation for sentencing purposes.  (Stats. 2018, ch. 1013, §§ 1-2.)  Under *In re Estrada* (1965) 63 Cal.2d 740, the amendments apply retroactively to this case, which was not yet final when they went into effect.  (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 972-973.)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  . . .  [T]he appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'  [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; see also *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 ["remand is required unless the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken a firearm enhancement"].)

In *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, the Court of Appeal refused to remand to allow the trial court to determine whether to dismiss a strike, reasoning that "no purpose would be served in remanding for reconsideration." (*Id.* at p. 1896.)  The trial court had stated that the maximum sentence was appropriate, especially since defendant " 'is the kind of individual the law was intended to keep off the street as long as possible.' " (*Ibid.*)  As such, reasoned the appellate court, the trial court had "indicated

13

that it would not, in any event, have exercised its discretion to lessen the sentence." (*Ibid.*)

Similarly, in *People v. Jones* (2019) 32 Cal.App.5th 267, this court found it would have been futile to remand and allow the trial court to consider whether to dismiss a prior strike under section 1385. Reasoning that an appellate court must "review the trial court's statements and sentencing decisions to infer what its intent would have been," we concluded there was "no possibility" that the trial court would strike the prior strike. (*Jones, supra*, at p. 273.) The trial court sentenced defendant to 22 years plus a consecutive 14 years to life, including the upper term for the defendant's conviction for assault with force likely to produce great bodily injury. (*Id.* at p. 271.) During sentencing, the trial court denied the defendant's motion for a new trial and stated that, based on the evidence, it felt " 'very comfortable with the verdict.' " (*Id.* at p. 273.) The defendant had acted " '[s]enselessly' " and " '[i]ncredibly' " during the murder at issue. (*Ibid.*) The trial court further stated, " 'This gives me[,] obviously, as you know, great satisfaction in imposing the very lengthy sentence here today,' " since the defendant had " 'earned the sentence here today.' " (*Id.* at p. 274.)

Here, in contrast, the trial court made no statements like those in *Gutierrez* or *Jones* that would clearly indicate it felt that either defendant should be "kep[t] off the street as long as possible," or that "imposing a very lengthy sentence" gave the court "great satisfaction." Although the probation report noted multiple aggravating factors for each defendant, they were phrased in the standard language of rule 4.421 and do not compel the conclusion that remand would be futile.

In addition, unlike *Jones*, the trial court lacked discretion to impose any sentence other than the one it did since this was not a capital case. (§§ 190 [subject to exceptions not applicable here, every defendant convicted of murder in the second degree shall be sentenced to 15 years to life], 190.2 [proscribing life without the possibility of parole in a noncapital case where the defendant is convicted of first degree murder and a jury finds

14

true a § 190.2, subd. (a)(2) enhancement], 4500 [proscribing life without parole in noncapital cases], former § 667, subds. (a)-(i), and former § 1385, subd. (b).) As such, the sentence imposed does not clearly indicate what the trial court would have decided regarding defendants' prior strike enhancements. Under the circumstances, the appropriate remedy is to remand the matter.

## IV

We next address defendants' argument that the trial court violated their rights to due process by imposing fines and fees without holding a hearing to determine their ability to pay them. This argument relies primarily on *Dueñas*, which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under [ ] section 1465.8 and Government Code section 70373." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) The *Dueñas* court also held that "although [ ] section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.)

Robles and Delossantos acknowledge that the trial court declined to impose certain fines and fees based on inability to pay, and each request that we strike the remaining fines and fees, or remand the matter for an ability to pay hearing. The People argue *Dueñas* is inapplicable because the due process concerns are different here because defendants face life without the possibility of parole.

A.      Dueñas *was incorrectly decided*

Regardless of any possible differences in the due process concerns of prisoners sentenced to life without the possibility of parole, we are not persuaded the analysis used in *Dueñas* is correct. Our Supreme Court is poised to resolve this question, having

15

granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted November 13, 2019, S257844.  In the meantime, we join the courts that have concluded that *Dueñas* was wrongly decided.  (See, e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946 (*Hicks*); *People v. Aviles* (2019) 39 Cal.App.5th 1055; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923-929 (*Caceres*).)

In support of its due process rationale, *Dueñas* relies on authorities in which courts have held it is unconstitutional to punish an indigent defendant or impede his access to the courts, solely on the basis of his poverty.  (*Dueñas, supra*, 30 Cal.App.5th at pp. 1165-1168, citing *In re Antazo* (1970) 3 Cal.3d 100, 103 [invalidating practice of requiring convicted defendants to serve jail time if they were unable to pay a fine or a penalty assessment], and *Griffin v. Illinois* (1956) 351 U.S. 12, 16-17, 19-20 [100 L.Ed. 891, 897-898, 899] [striking down a state practice of granting appellate review only to convicted criminal defendants who could afford a trial transcript].)  As courts have subsequently noted, the line of authorities in *Dueñas* addressing an indigent defendant's right of access to courts is inapplicable because the imposition of the challenged fines and assessments did not affect the ability of the defendant in *Dueñas* to present a defense at trial or to challenge the trial court's rulings on appeal.  (*Hicks, supra*, 40 Cal.App.5th at p. 326, review granted Nov. 26, 2019, S258946; *People v. Kingston, supra*, 41 Cal.App.5th at pp. 279-280; *People v. Aviles, supra*, 39 Cal.App.5th at pp. 1068-1069; *Caceres, supra*, 39 Cal.App.5th at p. 927; see also *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1038-1039 (conc. opn. of Benke, J.).)

Similarly, the authorities cited by *Dueñas* prohibiting incarceration for indigence alone are also inapplicable.  (*Hicks, supra*, 40 Cal.App.5th at p. 326, review granted Nov. 26, 2019, S258946; *Caceres, supra*, 39 Cal.App.5th at p. 927.)  Robles and Delossantos each were sentenced to life without parole.  We disagree that any resulting negative consequences from a civil judgment constitute punishment rising to the level of a due

16

process violation. (See *Caceres*, at p. 927 ["*Dueñas* cites no authority for the proposition that [the negative consequences from a civil judgment] constitute 'punishment' rising to the level of a due process violation"]; see also *People v. Gutierrez, supra*, 35 Cal.App.5th at p. 1039 (conc. opn. of Benke, J.) [fines and fees imposed in *Dueñas* did not "satisf[y] the traditional due process definition of a taking of life, liberty or property"].)

V

Robles separately argues that the evidence was insufficient to establish that he aided and abetted the victim's murder or the assault with a deadly weapon. According to Robles, there is no "solid evidence" that Robles knew of or shared Delossantos's intent to commit the homicidal act, or that Robles assisted in the commission of the murder. Robles further argues there is no "concrete evidence" that Robles knew of Delossantos's weapon, knew of and shared Delossantos's intent, or assisted in the commission of Delossantos's assault with a deadly weapon. Robles cites Officer Baker's testimony that Robles only kicked and punched the victim. Robles's claims are meritless.

In considering a claim of insufficient evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) We presume the existence of every fact supporting the judgment that the jury reasonably could deduce from the evidence, and a judgment will be reversed only if there is no substantial evidence to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Jennings* (2010) 50 Cal.4th 616, 638-639.) We do not substitute our judgment for that of the jury, reweigh the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

To be held liable as an aider and abettor, a defendant must have acted with knowledge of the criminal purpose of the perpetrators and with an intent or purpose of committing, encouraging or facilitating commission of the offense. (*People v. Mitchell*

17

(1986) 183 Cal.App.3d 325, 330.) Factors probative on the issue of knowledge and intent include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime. (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273.)

Here, given Robles's behavior before and during the attack, a jury could reasonably infer that Robles knew of Delossantos's plan to assault the victim with a deadly weapon and kill him. The video shows Robles walking with Delossantos toward the victim just before the incident. When the two reached the victim, Robles threw the first punch, and Delossantos immediately joined the melee. Robles then continued to hit and kick the victim while Delossantos stabbed him with the knife (in full view of Robles), making it easier for Delossantos to continue his assault. As such, even if Robles did not know of Delossantos's plan before the attack, a jury could reasonably conclude Robles realized it during the assault and actively aided and abetted Delossantos by preventing the victim from effectively defending himself or escaping. In sum, substantial evidence supports Robles's verdicts.[4]

VI

We turn next to Robles's challenge to his prior serious felony conviction enhancements. Robles contends the trial court erred in failing to advise him of his constitutional rights and the penal consequences of his admission of his prior convictions. According to Robles, as a result of these inadequate advisements, the trial court failed to obtain a knowing, voluntary, and intelligent admission of the prior conviction allegations.

---

[4]     Robles's reliance on *People v. Butts* (1965) 236 Cal.App.2d 817 is misplaced. The two defendants in that case were challenged to a fight. Each of the defendants became involved in separate brawls. (*Id.* at p. 824.) Defendant Butts "was too intoxicated to land a punch and was struck repeatedly" by his opponent, but the other defendant stabbed his opponent, who died. (*Id.* at p. 825.) *Butts* merely stands for the idea that the fatal use of a knife by a cohort was not foreseeable to a reasonable person in the defendant's position under the facts of that case. (*Id.* at pp. 836-837.)

18

The People concede that the trial court did not fully advise defendant of his rights before his admission, but argue that Robles's admission was knowing and voluntary based on the totality of the circumstances. We conclude that the error is harmless based on the circumstances of the case.

A. *Additional background*

1. *Prior conviction allegations and admission*

The prosecution alleged Robles had two prior convictions that qualified as strikes and serious felonies. (§§ 667, subds. (a)-(i), 1170.12.) Each of the convictions was for attempted murder (§§ 664/187) from the same 2005 case (Riverside County case No. RIF111919). It also was alleged Delossantos had one prior conviction that qualified as a strike and a serious felony.

Prior to trial, Delossantos requested bifurcated proceedings regarding the prior strike allegations. During an August 16, 2018 hearing, the prosecutor said he did not think it would be possible to bifurcate the issue, since the fact of a life sentence was an element of the section 4500 count. Counsel for Delossantos asked to address the issue later to give her an opportunity to speak with her client. Robles and his counsel were present during this hearing.

The issue arose again during another pretrial hearing held on August 21, 2018. The prosecutor questioned whether defendants wanted to bifurcate the trial of the prior strike and serious felony conviction allegations, noting it was "defendants' choice." The prosecutor again noted that the fact of a life sentence was an element of the section 4500 count, and "[i]t can either be admitted and the jury can be informed of the admission or I can prove it up."

The trial court asked each defendant how they wanted to proceed. Counsel for Delossantos stated she had spoken with her client and he wanted to "have the [prosecutor] prove it up . . . during the trial." Counsel for Robles similarly confirmed speaking with him and "explain[ing] to him that the [prosecutor] could prove that he is

19

serving a life sentence or he could just admit it, and he agrees he'd just admit it without having the file brought in to prove it."

The prosecutor then asked whether that meant defendants still wanted bifurcated trials for the prior strike and prior serious felony conviction allegations. Counsel for Delossantos stated it was no longer necessary to bifurcate the trial for Delossantos. The prosecutor continued, "And what that means is you've got to take an admission from Mr. Robles." Robles's counsel asked if the prosecutor meant that Robles would have to admit that "he has previously been convicted of a strike." The prosecutor responded, "Well, [Robles has] to admit the strikes if we're going to admit them, and then also he's got to admit that he's serving a life sentence." Robles's counsel responded, "He's prepared to do that."

The court noted there were two prior conviction allegations against Robles. After describing the first conviction at issue from the 2005 case, the court stated, "And Mr. Robles, you do have the right to have the jury decide the truth of that prior conviction as alleged in the Information." The court asked whether Robles understood this right, and Robles responded, "Yes." The court asked whether Robles gave up that right, and Robles responded, "Yes." Robles's counsel asked, "In other words, do you admit that you had the prior conviction?" Robles responded, "Yeah. I admit." The court interjected, "First I want to ask him and make sure he understands he has a jury trial right." Robles responded, "Yeah. I give it up." The court then asked whether Robles admitted the first conviction, and Robles responded, "Yes."

The court then turned to the second conviction from the 2005 case. After describing the conviction, the court asked, "Do you understand that you have the right to have the jury determine the truth of that prior allegation or that prior conviction?" Robles responded, "Yes." The court asked, "[D]o you waive that right?" and Robles replied, "Yes." The court asked whether Robles admitted the prior conviction, and Robles responded, "Yes." The court continued, "Do you admit that, Sir?" Although the

20

transcript does not reflect a response from Robles, the court continued, "Okay. And was [Robles] also going to admit that . . . he is serving a life sentence, [counsel]?" Robles's counsel responded, "Yes."

The court continued: "And Mr. Robles, in Count 2, it is—as an element of the crime, it is asserted and alleged as an element that you committed the current crime while undergoing a current life sentence in [state prison]. [¶] Do you understand and admit that you're currently serving a life sentence in [state prison]?" Robles responded, "Yes."

The court said, "Thank you," and asked whether there was "[a]nything further." The prosecutor asked for clarification as to how they would proceed. The court confirmed the prosecution would have to prove up Delossantos's prior strike and prior conviction for the murder and assault charges. The court also would advise the jury that Robles had stipulated that he was serving a life sentence, and there would be "no mention" of the strikes. Neither Robles nor his counsel objected.

2. *Robles's criminal history*

The probation report prepared for sentencing states that in 2001 (when Robles was 18 years old), the court found true that he violated former section 12101, subdivision (a), and former Health and Safety Code section 11383, subdivision (c)(1). In 2005, Robles was convicted of five counts of attempted murder (§§ 664/187), with firearm and gang enhancements, and sentenced to 200 years to life. In 2012, Robles was convicted of charges related to an assault on a fellow prison inmate (§ 4502, subd. (a)), and admitted a prior strike. He was sentenced to eight years in prison.

B. *Analysis*

Prior to accepting a defendant's admission of a prior conviction, the trial court "must advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses. [Citation.] Proper advisement and waivers of these rights in the record establish a defendant's voluntary and intelligent admission of the prior

21

conviction." (*People v. Mosby* (2004) 33 Cal.4th 353, 356; see also *Boykin v. Alabama* (1969) 395 U.S. 238, 242-244 [23 L.Ed.2d 274, 279-280], *In re Tahl* (1969) 1 Cal.3d 122, 130-133, and *In re Yurko* (1974) 10 Cal.3d 857, 863 & fn. 5.) The trial court also must advise defendant as to the penal effect of a true finding on a prior conviction allegation. (*People v. Cross* (2015) 61 Cal.4th 164, 170-171 (*Cross*).)

Here, the trial court advised Robles of his right to trial but failed to give the other advisements before Robles's admission of his prior convictions. Because Robles did not object to the term imposed for the prior serious felony at or before sentencing, however, he has no remedy with respect to the trial court's failure to advise him regarding the penal effect of his admission. (*People v. Villalobos* (2012) 54 Cal.4th 177, 181-182 [a trial court's failure to advise regarding the consequences of a plea is forfeited absent a timely objection because there is no constitutional mandate to do so]; see also *People v. Jones* (2009) 178 Cal.App.4th 853, 858 [" 'when the only error is a failure to advise of the penal consequences, the error is waived if not raised at or before sentencing' "].)

With respect to the remaining inadequate advisements, a trial court's failure to properly advise a defendant of his constitutional rights is "not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*Cross, supra*, 61 Cal.4th at p. 179; see also *People v. Farwell* (2018) 5 Cal.5th 295, 303 ["totality of the circumstances test applies in *all* circumstances where the court fails, either partially or completely, to advise and take waivers of the defendant's trial rights before accepting a guilty plea"].) We review the " 'whole record,' " including the defendant's previous experience in the criminal judicial system. (*Cross*, at p. 180.)

Before Robles's admission, the trial court thrice informed Robles that he had "the right to have the jury determine the truth of that prior conviction." Robles responded three times that he understood that right and waived it. The prosecutor also made clear prior to Robles's admission that it was "defendants' choice" as to how to proceed and

22

explained he also could prove the prior convictions. Robles's counsel discussed the issue with Robles between the hearings on August 16 and 21 and informed the court during the August 21 hearing that Robles was "prepared" to admit the prior convictions. Moreover, before admitting the prior convictions, Robles observed Delossantos elect to require the prosecutor to prove the fact of his prior conviction and life sentence.

After Robles entered his admissions, neither he nor his counsel objected when the trial court asked if there was anything further. Robles and his counsel remained silent when the prosecutor clarified that, although he would "prove up" Delossantos's prior convictions, the trial court would not mention the prior convictions but instead would simply inform the jury that Robles was serving a life sentence at the time of the incident.

In addition, Robles was no stranger to the criminal justice system. As part of his 2012 case, Robles admitted a prior strike. (See *Cross, supra*, 61 Cal.4th at p. 180 [a defendant's criminal record is " 'relevant to [his] " 'knowledge and sophistication regarding his [legal] rights' " ' " ].) Robles also had been convicted of multiple felonies in 2005 and had experience with the juvenile justice system starting in 2001.

Under the totality of the circumstances, we conclude the stipulation was knowing and voluntary, and Robles was not prejudiced by the trial court's failure to fully advise him of his rights before entering it.

VII

Delossantos argues we must strike the one-year sentence for personal use of a weapon (§ 12022, subd. (b)(1) (hereafter section 12022(b)(1)) on the assault with a deadly weapon count (§ 4500), because weapon use already was an element of the underlying offense. The People agree, as do we.

A.      *Additional background*

With respect to the assault count, the jury was instructed that the People had to prove that Delossantos "did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person."

B.    *Analysis*

Section 12022(b)(1) states:  "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, *unless use of a deadly or dangerous weapon is an element of that offense*."  (Italics added.)  "As a general rule, '[t]he phrase "element of the offense" signifies an essential component of the legal definition of the crime, considered in the abstract.'  [Citation.]"  (*People v. Landry* (2016) 2 Cal.5th 52, 127 (*Landry*).)

As explained in *Landry*, "section 4500 defines a single offense that can be committed in one of two ways, by use of a deadly weapon or instrument *or* by any means of force likely to produce great bodily injury.  Whether in a particular case, the use of a deadly weapon or instrument was an element of the offense cannot be answered in the abstract; 'the conduct of the accused, i.e., the means by which he or she violated the statute, must be considered.' "  (*Landry, supra*, 2 Cal.5th at p. 129.)

Here, the evidence showed Delossantos used a knife to stab the victim.  In addition, the jury was instructed that it could only find Delossantos guilty of the crime if he "did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person."  Because Delossantos's use of the knife was an element of his conviction for assault with a deadly weapon (§ 4500), the deadly weapon use enhancement must be stricken.  (*Landry, supra*, 2 Cal.5th at p. 129; *People v. McGee* (1993) 15 Cal.App.4th 107, 110 [striking former § 12022(b)(1) enhancement to § 245 conviction]; *People v. Summersville* (1995) 34 Cal.App.4th 1062, 1069-1070 [same].)

## DISPOSITION

The judgment against Robles is modified to strike the $1,000 parole revocation restitution fine.  The judgment against Delossantos is modified to strike the one-year term imposed for the section 12022 enhancement to the assault with a deadly weapon conviction, and to strike the $1,000 parole revocation restitution fine.  As to both Robles

24

and Delossantos, the matter is remanded for the trial court to consider exercising its discretion under sections 667 and 1385 to strike the prior serious felony conviction enhancements.  The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

                                                    KRAUSE            , J.


We concur:


        RAYE            , P. J.


        MURRAY          , J.